UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

ANDRE PACHECO,

                                        Plaintiff,

          vs.                                                    9:09-CV-1330
                                                                  (TJM/ATB)

ZURLO, et al.,

                                        Defendants.
_____

ANDRE PACHECO, Plaintiff *pro se*
CHARLES J. QUACKENBUSH, Asst. Attorney General for Defendant

ANDREW T. BAXTER, United States Magistrate Judge

### ORDER and REPORT-RECOMMENDATION

          This matter has been referred to me for Report-Recommendation by the

Honorable Thomas J. McAvoy, Senior United States District Judge, pursuant to 28

U.S.C. § 636(b) and Local Rules N.D.N.Y. 72.3(c).

I.     **Facts and Procedural History**

          Plaintiff has HIV[1] and suffers from neuropathy, which apparently makes it very

difficult for him to climb stairs.  (Compl. at 3).  On July 22, 2009, plaintiff submitted a

Request for Reasonable Accommodation pursuant to the ADA, specifically requesting

"to be able to access facilities without stairs."  (Compl. p. 13[2]).  The medical

verification portion of the form submitted by plaintiff was signed by an M.D. on

_____

          [1] Human Immunodeficiency Virus.

          [2] Plaintiff numbered the pages of his complaint, but not the attached documents.  For ease
of reference, citations to these materials will be indicated by the page number assigned by the
court's Case Management/Electronic Case Files (CM/ECF) system.

August 4, 2009, and states that plaintiff suffers from "bilateral sensory/motor polyneuropathy [of the] upper and lower extremities with chronic pain, numbness, weakness [in] both legs/arms." *Id.* The doctor also indicated that plaintiff "would benefit [from a] flat facility with no stairs." *Id.* The determination portion, signed by defendant Zurlo on October 2, 2009, has three boxes: Approved, Modified, and Denied. *Id.* The "Modified" box is checked, with the explanation that "inmate Pacheco is not to be programmed on the 2nd floor of [the] program building." *Id.* Plaintiff signed the form on October 14, 2009, and checked the box indicating "I agree with this determination." *Id.*

Plaintiff alleges that, instead of modifying his request, defendant Zurlo should have immediately transferred plaintiff to a flat facility. (Compl. at 3). On the same day he signed the Request for Reasonable Accommodation form, plaintiff submitted a grievance stating that he had "signed the wrong box."[3] (Compl. p. 16). The Inmate Grievance Review Committee (IGRC) denied plaintiff's grievance on October 28, 2009. (Compl. p. 17). Plaintiff appealed the decision to the Superintendent, who affirmed the decision of the IGRC, stating that, "pursuant to direction from the ADA Coordinator in Central Office, [plaintiff's] Reasonable Accommodation Request was modified . . . grievant will not be granted a medical transfer." (Compl. p. 19). Plaintiff appealed the Superintendent's decision on November 3, 2009. *Id.* Plaintiff

---

[3] Plaintiff apparently misunderstood what checking the box on the Request for Reasonable Accommodation form meant, because he explains in his appeal of the Superintendent's determination of Grievance No. ALT-3531-09 that "I signed that I agreed based on my belief that the committee agreed with the doctor that I should receive my request." (Compl. p. 19).

filed his complaint on November 27, 2009.

In his civil rights complaint, plaintiff alleges that defendants violated his right to reasonable accommodations under the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12101 *et seq.*, and interfered with his right of access to the courts.  Plaintiff includes two causes of action: first, that defendant Zurlo should have transferred plaintiff to a "flat facility," but instead, "acted outside his legal authority by referring the approved reasonable accommodations request to the New York State Americans With Disabilities Act Coordinator." (Compl. at 3).  Second, plaintiff claims that defendants have prevented him from accessing the law library, thereby preventing him from doing the "necessary research and adequately respond[ing] to moving papers." (Compl. at 2-3).  Plaintiff alleges that due to defendants' actions, he suffered "from his medical condition," and their actions caused "pain and suffering to plaintiff on a daily basis." (Compl. at 3).  Plaintiff attached copies of his "inmate grievance and appeals as proof of administrative exhaustion of remedies." (Compl. at 3).  Plaintiff seeks five million dollars in damages.

On June 16, 2010, defendants' filed a motion to dismiss the action for failure to state a claim pursuant to FED. R. CIV. P. 12(b)(6).  (Dkt. No. 24).  Plaintiff responded in opposition to the motion.  (Dkt. No. 25).  Because it was necessary to consider documents that may not have been part of, or referenced in, the complaint, on September 28, 2010, this court converted defendants' motion to dismiss to a motion for summary judgment and afforded both plaintiff and defendants an opportunity to supplement their papers. (Dkt. No. 26).

Defendants filed a "Supplement in Support of the Motion for Summary Judgment" on October 29, 2010, arguing that plaintiff failed to exhaust his administrative remedies, and that the complaint may also be dismissed on the merits. (Dkt. No. 29). Plaintiff filed an "Affidavit in Opposition" to summary judgment on November 4, 2010, and filed additional documents on February 7, 2011. (Dkt. Nos. 30, 35). The court notes that on February 2, 2011, plaintiff also filed a letter-motion, requesting that the court serve plaintiff's "interrogatories" on the Assistant Attorney General. (Dkt. No. 34).

For the following reasons, this court agrees with defendants and finds that plaintiff has failed to exhaust his administrative remedies. However, rather than recommending dismissal without prejudice solely for failure to exhaust, this court recommends granting defendants' motion for summary judgment because plaintiff has failed raise a triable issue of fact with respect to the ADA claim, the access to courts claim, and any "implied" Eighth Amendment claim. Thus, the court will recommend dismissal of the complaint in its entirety. This court will deny plaintiff's request to serve interrogatories on defendants as improper and irrelevant.

## II.    Exhaustion of Administrative Remedies

### A.    Legal Standards

The Prison Litigation Reform Act, (PLRA), 42 U.S.C. §1997e(a), requires an inmate to exhaust all available administrative remedies prior to bringing a federal civil rights action. This requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and regardless of the

4

subject matter of the claim. *See Giano v. Goord*, 380 F.3d 670, 675-76 (2d Cir. 2004) (citing *Porter v. Nussle,* 534 U.S. 516, 532 (2002) (exhaustion requirement applies, *inter alia*, to excessive force claims)).  Inmates must exhaust their administrative remedies even if they are seeking only money damages that are not available in prison administrative proceedings. *Id.* at 675.  This rule applies to constitutional and ADA claims brought by inmates. *See Alster v. Goord*, No. 05 Civ. 10883, 2010 WL 3835081, at *8 (S.D.N.Y. Sept. 10, 2010) (ADA claims must be exhausted through the grievance procedure prior to bringing claims in federal court).  The failure to exhaust is an affirmative defense that must be raised by the defendants. *Jones v. Bock*, 549 U.S. 199, 216 (2007); *Johnson v. Testman*, 380 F.3d 691, 695 (2d Cir. 2004).  As an affirmative defense, it is the defendants' burden to establish that plaintiff failed to meet the exhaustion requirements. *See, e.g, Key v. Toussaint*, 660 F. Supp. 2d 518, 523 (S.D.N.Y. 2009) (citations omitted).

The grievance procedure in New York is a three-tiered process.  The inmate must first file a grievance with the Inmate Grievance Resolution Committee (IGRC). N.Y. COMP. CODES R. & REGS., tit. 7 §§ 701.5(a)(1) and (b).  An adverse decision of the IGRC may be appealed to the Superintendent of the Facility.  *Id.* § 701.5(c).  Adverse decisions at the Superintendent's level may be appealed to the Central Office Review Committee (CORC).  *Id.* § 701.5(d).  The court also notes that the regulations governing the Inmate Grievance Program encourage the inmate to "resolve his/her complaints through the guidance and counseling unit, the program area directly affected, or other existing channels (informal or formal) prior to submitting a

5

grievance." *Id.* § 701.3(a) (Inmate's Responsibility).

The Supreme Court has held that in order to properly exhaust an inmate's administrative remedies, he must complete the administrative review process in accordance with the applicable state rules. *Jones v. Bock*, 549 U.S. at 218-19 (citing *Woodford v. Ngo*, 548 U.S. 81 (2006)). It is also well-settled that the grievance process must be complete prior to the inmate filing suit in federal court. *Burgos v. Craig*, 307 Fed. Appx. 469, 470 (2d Cir. 2008) (citing *Neal v. Goord*, 267 F.3d 116, 121-22 (2d Cir. 2001), *abrogated in part on other grounds by Porter*, 534 U.S. 516). Completing the exhaustion requirement after the federal action is filed in insufficient. *Id.* This is true even if the inmate has filed the grievance prior to the federal action, but has not received a final decision on the grievance appeal. *Id. See also Mendez v. Artuz*, No. 01 Civ. 4157, 2002 WL 313796, at *2 (S.D.N.Y. Feb. 27, 2002) (dismissing for failure to exhaust when plaintiff brought federal action while appeal to CORC was pending, even though at the time of the decision, the final decision had likely been rendered). The PLRA removed the district court's discretion to stay proceedings while administrative remedies were being exhausted, and therefore, courts must generally dismiss unexhausted claims. *Garner v. Dwyer*, No. 09 Civ. 5767, 2010 WL 2899392, at *2 (S.D.N.Y. July 19, 2010).

### B.    Application

In this case, while he was incarcerated at Altona, plaintiff filed two grievances relevant to the issues in this action. Defendants have attached copies of the grievances to their supplemental papers, as exhibits to their Local Rule 7.1(a)(3) statement of

material facts. (Dkt. No. 29-6, Exs. B-1 and B-2). The first grievance was ALT-3531-09. (Dkt. No. 29-6, Ex. B-1)  Plaintiff filed the grievance on October 13, 2009, complaining that DOCS was not complying with the ADA, and that a nurse was violating a doctor's order that plaintiff not climb stairs. (Dkt. No. 29-6 at 3-4 and 6). The grievance mentioned that his medical records showed that his condition was degenerative and that he was "eventually going to require" the use of a wheelchair. (Dkt. No. 29-6 at 4).  Plaintiff then stated that, in fact, "the specialist has recommended that I already be using a wheelchair, but I am denied at this facility." *Id.* In his first grievance, plaintiff also requested a transfer. (*Id.* at 3).

On October 28, 2009, the IGRC recommended that plaintiff not be "programmed on the 2nd floor of the School Building."[4] (Dkt. No. 29-6 at 6, 7) (Case History & Record).  No mention was made of either the wheelchair or the transfer. Plaintiff appealed to the Superintendent.  On November 3, 2009, the Superintendent denied the grievance, finding that according to the Acting Deputy Superintendent for Programs, pursuant to the ADA Coordinator in the "Central Office," plaintiff's request for "Reasonable Accommodation"[5] was "modified" so that he would not be required to attend programs on the second floor of the Program Building. (*Id.* at 2, 6).  Plaintiff

---

[4] The IGRC recommendation also notes that plaintiff "agreed with the modification and signed the form on October 14, 2009." (Dkt. No. 29-6 at 7).

[5] Plaintiff's "Request for Reasonable Accommodation" has been included in the grievance documents. (Dkt. No. 29-6 at 9).  The original request was submitted by plaintiff on July 22, 2009. *Id.* Plaintiff requested only that he "be able to access facilities without stairs." *Id.*  The "medical verification" was signed on August 4, 2009, the determination was signed by the Acting DSP on October 2, 2009, and plaintiff indicated signed the form that he "agree[ed]" with the determination on October 14, 2009. *Id.*

was not granted a medical transfer, but the Superintendent's decision noted that plaintiff was seen by the doctor on October 9, 2009, and the doctor restricted plaintiff to "no work/sports/gym/school or stairs for an indefinite amount of time." *Id.* Plaintiff's appeal of the Superintendent's decision to the CORC was dated November 5, 2009. (*Id.*).  In his appeal, he stated that he was "tricked" into signing the form[6] and agreeing to the modification of his request because he believed he was going to be "moved" because of his restrictions. (Dkt. No. 29-6 at 2).

The CORC decision is dated December 23, 2009, approximately on month ***after*** plaintiff filed this action on November 27, 2009. (Dkt. No. 29-6 at 1).  The CORC affirmed the Superintendent's denial of plaintiff's grievance, also stating that "Altona CF is considered a flat facility." *Id.*  This court notes that the Investigative Report, associated with plaintiff's grievance, does discuss access to the Law Library to the extent that it notes that plaintiff may access the first floor of the Program Building for notary services and to use the Law Library. (Dkt. No. 29-6 at 8).

Plaintiff's second grievance was ALT-3554-09 and was filed on November 30, 2009, three days ***after*** his federal complaint was filed, and while the CORC appeal of

_____

[6] Requests for Reasonable Accommodation forms contain a section entitled "Inmate's Request," another section entitled "Medical Verification," a third section, entitled "Reasonable Accommodation Determination," and a final section, entitled "Inmate's Receipt." (Dkt. No. 29-6 at 9).  The "Reasonable Accommodation Determination" section contains three smaller boxes.  The first states that the requested reasonable accommodation has been "Approved," the second box says that the request has been "Modified," and the third box states that the request has been "denied." *Id.*  The defendants' exhibit shows that plaintiff's request had been "Modified." *Id.*  The "Inmate's Receipt" section contains two boxes to check.  One box states that "I agree," and the second box states that "I disagree," with this determination. *Id.*  On October 14, 2009, plaintiff signed the form and checked the "I agree" box. *Id.*  This would indicate that he agreed with the "modified" determination, that he not be programmed on the second floor of the Program Building.

his first grievance was still pending.  Thus, none of the responses to plaintiff's second grievance were issued before the federal complaint was filed.  Plaintiff's second grievance indicated that he had filed another request for "reasonable accommodation" under the ADA on October 26, 2009. (Dkt. No. 29-7 at 6).  Plaintiff claimed that on November 13, 2009, a doctor approved plaintiff's request for a facility transfer, but that defendant Zurlo failed to complete the form because plaintiff had filed another unspecified grievance against defendant Zurlo, alleging that he had "unlawful" possession of a letter that plaintiff was sending to a federal court. *Id.*

The IGRC denied the grievance on December 9, 2009, the Superintendent affirmed the denial on December 9, 2009, and the CORC affirmed the Superintendent's denial on February 17, 2010. (Dkt. No. 29-7 at 1, 6).  The CORC decision stated that there was no evidence of staff malfeasance, the prior grievance had already addressed his ADA issue, and that "a transfer is not a reasonable accommodation as defined by Directive #2614." (Dkt. No. 29-7 at 1).  Finally, the CORC found that plaintiff's placement at Altona was appropriate because it ***was considered a flat facility***. *Id.*

Because plaintiff filed this federal action prior to receiving the CORC response to his first grievance and prior to receiving any of the responses to his second grievance, he has technically failed to exhaust his administrative remedies, regardless of whether he brought all of his claims in either or both of the grievances.  It is also arguable that plaintiff's access to courts claim was not properly raised in plaintiff's grievances.  There was some mention of access to the Law Library in plaintiff's first

9

grievance, and plaintiff's second grievance contained some fleeting statement that defendant Zurlo confiscated and opened a piece of legal mail, addressed to the federal court.  However, it appears that the only reason that plaintiff mentioned the legal mail was because plaintiff was speculating that the reason that defendant Zurlo failed to sign plaintiff's second reasonable accommodation request was because plaintiff had filed a different grievance against defendant Zurlo, challenging the alleged opening of plaintiff's legal mail.  No access to courts issue was before the grievance committee in plaintiff's second grievance.

In plaintiff's response to defendants' original motion to dismiss, he argued that his filing of the federal action before he received final decisions on his grievances should be excused because he is *pro se*. (Dkt. No. 25 at 3).  He stated that even if he made an error by filing his action too early, the court should have either stayed the action or dismissed without prejudice to re-filing.  The case law supports the latter action.

The PLRA specifically applies to prisoners' litigation, and the exhaustion requirement would be eviscerated if the failure to exhaust could be excused simply because the plaintiff was a *pro se* inmate.[7]  The court in *Mendez v. Artuz* found that it was required to dismiss the action when plaintiff's appeal was pending in the CORC at the time he filed his federal complaint, notwithstanding that "in the time that [the] matter [had] been pending, administrative remedies might well have been finally

---

[7] This court finds the fact that plaintiff is *pro se* is not a "special circumstance" excusing the exhaustion requirement.

exhausted." 2002 WL 313796, at *2.  Although this court could now simply recommend dismissing the action without prejudice and allow plaintiff to re-file an amended complaint with any issues that he actually did exhaust in his two grievances, this court finds that notwithstanding his failure to exhaust, plaintiff has failed to raise any issues of fact regarding either constitutional or ADA claims.

## III.   Americans with Disabilities Act

### A.   Legal Standards

The ADA is applicable to inmates in state correctional facilities. *Allah v. Goord*, 405 F. Supp. 2d 265, 274 (S.D.N.Y. 2005).  Under the ADA, the inmate must establish that he (1) is a qualified individual with a disability; (2) is being excluded from participation in, or being denied benefits of some service, program or activity by reason of his or her disability; and (3) the entity providing the service is a public entity. *Id.*  Prisons fall within the ADA definition of "public entities," and damages are available against defendants in their "official capacities." *Id.*  However, the ADA does not provide for liability against individual defendants. *Id. See also Garcia v. S.U.N.Y. Health Science Center of Brooklyn*, 280 F.3d 98, 107 (2d Cir. 2003).

### B.   Application

First, because plaintiff may not bring an ADA claim as against either defendant in his individual capacity, the complaint may be dismissed to the extent that it seeks those damages from defendants Zurlo and Wright.  Turning to the merits of plaintiff's allegations, it is unclear how plaintiff was denied any service, program, or activity by reason of his inability to walk up stairs.  Even assuming that he is a "qualified

individual" with a disability, he does not allege that he was denied any program because he could not go to the second floor of the Program Building.  In fact, the response to plaintiff's grievance accepted his complaint to the extent that he was not to be programmed on the second floor.  The response also indicated that he could access notary service and the Law Library from the first floor.  Plaintiff does not specify any specific program in which he could not participate because of his disability.

Finally, as stated by the response to plaintiff's grievance, a "transfer" is not necessarily a "reasonable accommodation."   Prison personnel could accommodate an individual in various ways without transferring him to another facility.  In any event, even assuming that a transfer was appropriate under the ADA,[8] plaintiff has not shown that there was another facility to which he could have been transferred that was more appropriate than Altona.  Thus, his ADA claim may be dismissed.

## IV.   <u>Eighth Amendment</u>

In his first response in opposition to defendants' motion to dismiss, plaintiff states that, if the individual defendants may not be liable under the ADA, then the court should read plaintiff's complaint liberally and assume that he meant to raise an Eighth Amendment claim in addition to the ADA claim. (Dkt. No. 25 at p.3).  Plaintiff cites the well-established rule that the allegations in plaintiff's complaint must be read to raise the strongest arguments they suggest. *Id.* (citing *Weixel v. Board of Educ. of City of New York*, 287 F.3d 138, 145-46 (2d Cir. 2002)). *See also Burgos v. Hopkins*,

---

[8] The court makes no such finding.

12

14 F.3d 787, 790 (2d Cir.1994).  In this case, however, even construing plaintiff's complaint broadly to include an Eighth Amendment claim, and assuming that the part of the complaint, alleging the need for wheelchair was exhausted, the complaint cannot withstand summary judgment.

### A.    Personal Involvement

#### 1.    Legal Standards

In order to hold an individual liable for damages in a section 1983 action, plaintiff must allege that the individual was "personally involved" in the constitutional violation of which he complains. *Farrell v. Burke*, 449 F.3d 470, 484 (2d Cir. 2006); *Williams v. Smith*, 781 F.2d 319, 323 (2d Cir. 1986).  In *Williams*, the Second Circuit detailed the various ways in which a defendant can be personally involved in a constitutional deprivation. 781 F.2d at 323-24.  A supervisory official is said to have been personally involved if that official directly participated in the infraction. *Id*. Personal involvement may be shown if, after learning of a violation through a report or appeal, the supervisory official failed to remedy the wrong. *Id*.  Personal involvement may exist if the official created a policy or custom under which unconstitutional practices occurred or allowed such a policy or custom to continue. *Id*. Finally, a supervisory official may be personally involved if he or she were grossly negligent in managing subordinates who caused the unlawful condition or event. *Id*.

#### 2.    Application

In this case, plaintiff names defendants Zurlo and Wright.  Defendant Zurlo was the Acting Deputy Superintendent for Programs at Altona during the time in question,

and Lester Wright is the Chief Medical Officer for DOCS in Albany.  Reading
plaintiff's complaint very broadly, this court finds that plaintiff is attempting to argue
that his incarceration in a facility in which plaintiff cannot access the second floor of
the program building and the defendants' apparent failure to give plaintiff a
wheelchair violates plaintiff's right to be free from cruel and unusual punishment.

Assuming that plaintiff's complaint can be read to raise an Eighth Amendment
claim, this court cannot find that defendant Wright was in any way personally
involved in either the failure to transfer plaintiff or in the alleged denial of a
wheelchair.  Plaintiff argues that defendant Wright "has to assume supervisory
liability" where there are medical issues involved. (Dkt. No. 25 at p.4).  Plaintiff then
simply cites the case law, holding that a supervisory official is personally involved if
he creates a policy or custom under which unconstitutional practices occurred or
allowed them to continue. *Id.*

While plaintiff's citation of the law is correct, he has advanced absolutely no
facts to support any "policy or custom" that defendant Wright would have created that
applies to plaintiff's situation.  Plaintiff cannot simply make conclusory allegations
that there was a "policy" and survive a motion for summary judgment. *August v. New
York Presbyterian Med. Ctr.*, 593 F. Supp. 2d 659, 663 (S.D.N.Y. 2009) (quoting
*Morris v. Lindau*, 196 F.3d 102, 109 (2d Cir. 1999)).  Plaintiff alleges only conduct
that applied to him, and there is no indication that defendant Wright was even

14

informed of the situation.[9]  Thus, this court will recommend that the complaint be dismissed in its entirety as to defendant Wright for lack of personal involvement.[10]

### B.    Merits

Plaintiff's claim can be interpreted as raising either a conditions of confinement claim or a medical care claim, or both.  Regardless of how plaintiff's claim is interpreted, it does not rise to the level of a constitutional violation.

### 1.    Legal Standards

The Eighth Amendment protects inmates from cruel and unusual punishment. U.S. CONST. amend. 8.  Cruel and unusual punishment takes the form of "unnecessary and wanton infliction of pain" by prison officials. *Wilson v. Seiter*, 501 U.S. 294, 297 (1991); *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).  Under the Eighth Amendment, an inmate has the right to be free from conditions of confinement that impose an excessive risk to the inmate's health or safety. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

In order to prevail on an Eighth Amendment claim, the plaintiff must prove both objectively, that the deprivation was "sufficiently serious," and subjectively, that

---

[9] Plaintiff states that defendant Wright was part of the CORC, however, there is no indication of how plaintiff came to this conclusion, nor any support for it in the record.  Plaintiff appears to assume that because he was told in the response to his grievance that the ADA Coordinator was in Albany, that individual was defendant Wright.  However, defendant Wright is the Chief Medical Officer of DOCS, not the ADA Coordinator.

[10] The court would point out that, although plaintiff claims that his medical situation created the denial of access to courts, there is also no allegation or evidence that defendant Wright was any way involved with plaintiff's Sixth Amendment claim.  As the chief medical officer, defendant Wright has no authority to provide legal assistance to plaintiff.

defendants acted with "deliberate indifference" to the inmate's health or safety. *Phelps v. Capnolas*, 308 F.3d 180, 185 (2d Cir. 2002) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)).  The objective element involves an analysis of whether a plaintiff is being denied "the minimal measure of life's necessities," including medical care, food, clothing, and shelter. *Phelps*, 308 F.3d at 185 (quotation omitted).  The subjective element focuses upon the official's state of mind and is only met if the official knows of and disregards an excessive risk to the inmate's health or safety. *Id.* at 185-86.  This state of mind has been referred to as "deliberate indifference" and has been likened to the standard of "recklessness" as used in criminal law. *Id.* at 186.

### 2.    Application

None of the facts alleged by plaintiff in this case rise to the level of a serious deprivation, and there is no evidence of deliberate indifference by defendants. Plaintiff alleges that he cannot climb stairs which prevents him from attending certain programs offered by the prison.  However, the inability to attend a program is not serious deprivation for Eighth Amendment purposes.  "Programs" do not come within the "minimal measure of life's necessities."  Plaintiff complains that he should have been transferred to a "flat facility," and he argues that the doctor prescribed such a transfer.  A review of plaintiff's request for reasonable accommodation shows that the doctor stated that "would benefit from a flat facility with no stairs." (Dkt. No. 29-7 at 10).  As a result, defendant Zurlo stated that plaintiff would not be programmed on the second floor of the Program Building. *Id.*  There is no indication that plaintiff had to climb stairs for any other reasons.  The fact that the doctor stated that plaintiff "would

16

benefit from" a transfer does not indicate that the failure to transfer plaintiff rose to the level of deliberate indifference.  Finally, plaintiff never states where he could or should have been transferred to fulfill his alleged needs that would have been "flatter" than Altona.  The CORC decision stated that "Altona CF is considered a flat facility." (Dkt. No. 29-7 at 1, 12).

With respect to plaintiff's alleged request for a wheelchair, the court notes that there is no request for a wheelchair in either of his Requests for Reasonable Accommodation. (Dkt. Nos. 29-6 at 9, 29-7 at 2, 9).  The only place in which plaintiff mentions a wheelchair is, briefly, in his first grievance.  There he states that his condition is degenerative, and he would "eventually" need the use of a wheelchair. (Dkt. No. 29-6 at 4).  In the next breath, he states that "the specialist" has already recommended the use of a wheelchair, but he was "denied at the facility." *Id.*  There is absolutely no evidence in the record of either a "recommendation" that plaintiff have a wheelchair or a denial of a wheelchair.  Thus, plaintiff's fleeting comment to "eventually" needing a wheelchair does not rise to the level of a serious medical need, nor is there any indication that defendant Zurlo knew about, or was deliberately indifferent to, plaintiff's purported serious medical need for a wheelchair.  Thus, plaintiff's Eighth Amendment claims may be dismissed in their entirety.

## V.   <u>Access to Courts</u>

Plaintiff claims that defendants have deprived him of access to courts by making it difficult for him to get to the Law Library.  In his complaint, he alleges that "there is no process at the Altona Correctional Facility whereby plaintiff may obtain

17

the required research materials and assistance of a trained legal clerk." (Compl. at p.3).  Plaintiff also alleges that he is in danger of having a civil complaint dismissed due to the defendants' actions. *Id.*

### A.   Legal Standards

In *Bounds v. Smith*, 430 U.S. 817 (1977), the Supreme Court held that access to the courts is a fundamental right that requires prison authorities to "assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Id.* at 828.  The Supreme Court has also held that an inmate alleging a denial of access to courts must show actual injury as a result of the deficient access to courts. *Lewis v. Casey*, 518 U.S. 343 (1996).  The cause of the injury must be inadequacy of the access. *Id*. at 351.  Plaintiff must show that a non-frivolous legal claim was frustrated or impeded due to the actions of prison officials. *Warburton v. Underwood*, 2 F. Supp. 2d 306, 312 (W.D.N.Y. 1998)(quoting *Lewis v. Casey*, 518 U.S. at 353).  It has also been held that a plaintiff alleging interference with his access to courts "must have been without the opportunity to overcome the impediment before suffering the actual injury." *Odom v. Baker*, 02-CV-757, 2008 WL 281789, at *5 (W.D.N.Y. Jan. 31, 2008) (citing *Howard v. Leonardo*, 845 F. Supp. 2d 943, 947 (N.D.N.Y. 1994)).

### B.   Application

Although plaintiff alleges that he could not access the Law Library, the investigative report for his first grievance states that "Inmate Pacheco may access the first floor of the Program Building for notary and to use the Law Library." (Dkt. No.

18

29-6 at 8).  Although plaintiff states that defendant Zurlo's actions have placed

another action "in jeopardy," because of the defendant's removal of medical records

from plaintiff's mail, there is no indication that plaintiff's case was actually lost

because of this alleged conduct.  In fact, the other cases that plaintiff has pending in

this district are still open and continuing. *See Pacheco v. Fischer*, 9:09-CV-614

(NAM/ATB); *Pacheco v. Zurlo*, 9:09-CV-1419 (DNH/RFT).[11]

Because plaintiff cannot show actual injury as a result of any of the defendants'

actions, this court will recommend dismissal of plaintiff's access to courts claims.

## VI.   **Request for Discovery**

On February 2, 2011, this court received a letter-motion from plaintiff

requesting that the court send a copy of plaintiff's interrogatories to defense counsel.

(Dkt. No. 34).  The interrogatories are directed to defendant Wright, in an attempt to

show that he may have been "personally involved" in plaintiff's grievance.  In his

interrogatories, plaintiff asks whether defendant Wright was one of the "hearing

officers" who is part of the Central Office Review Committee, and whether he

"personally" reviewed plaintiff's grievance. (Dkt. No. 34 at 2).  Plaintiff asks other

questions which assume that defendant Wright did review the grievance himself. *Id.* at

2-3.  Plaintiff then asks questions regarding whether the Governor of New York has

mandated that medical care provided by DOCS be reviewed and whether a

---

[11] The court notes that 9:09-CV-1419 was filed after this action, and therefore, defendant
Zurlo's conduct could not have prejudiced 09-CV-1419.  However, the court is simply listing
plaintiff's open cases to show that he has not been injured in this district by the defendants' alleged
actions.

"Commission of Corrections" study found that DOCS provides sub-standard care to inmates.

This court does not serve documents for plaintiffs, and normally, plaintiff's request would be stricken.  However, the court will consider plaintiff's request.  First, this court has determined that regardless of defendant Wright's alleged involvement, plaintiff's claims still would not survive summary judgment.  Second, plaintiff's interrogatories regarding general medical care are totally irrelevant to the issues in this case.  Thus, this court will recommend granting defendants' motion for summary judgment, and will deny plaintiff's request for the court to either send the interrogatories to defense counsel, both procedurally and based on the content of the requests.

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that defendants' motion for summary judgment (Dkt. No. 24) be **GRANTED** and plaintiff's complaint **DISMISSED IN ITS ENTIRETY**, and it is

**ORDERED**, that plaintiff's letter-motion, requesting the court to serve interrogatories on defense counsel (Dkt. No. 34) is **DENIED.**

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.**  *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993)(citing

20

*Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28

U.S.C. § 636(b)(1); FED. R. CIV. P. 6(a), 6(e), 72.

Dated: February 8, 2011

Hon. Andrew T. Baxter
U.S. Magistrate Judge